# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 3:17-CV-000619-KDB-DCK

| | |
|---|---|
| CHARLES BENZING,<br><br>**Plaintiff,**<br><br>v.<br><br>STATE OF NORTH CAROLINA,<br>NORTH CAROLINA<br>DEPARTMENT OF PUBLIC<br>SAFETY (NCDPS),<br>ANNE L. PRECYTHE,<br>KAREY SCOTT TREADWAY,<br>AMY RUNYAN SWEATT,<br>LESLIE DEANE EWALD,<br>TASHA DESHAWN<br>LOCKRIDGE<br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on both Plaintiff and Defendants' Motions for Summary Judgment on all claims (Docs. No. 58 and 59). The Court has carefully considered these motions and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** summary judgment to the Defendants and **DENY** the Plaintiff's motion.

Plaintiff Charles Benzing ("Benzing") alleges various constitutional violations based on his arrest, state conviction and sentence for criminal contempt and subsequent probation restrictions. The Defendants are the State of North Carolina ("State"), North Carolina Department of Public Safety ("NCDPS") and a number of NCDPS employees, including Anne L. Precythe ("Precythe") (former Director), Karey Scott Treadway ("Treadway") (District Manager), Amy Runyan Sweatt ("Sweatt") (Chief Probation Officer), Leslie Deane Ewald ("Ewald") (Probation

1

Officer) and Tasha Deshawn Lockridge ("Lockridge") (Probation Officer). The Court finds that there is no dispute as to any material facts and Defendants are entitled to judgment as a matter of law because Plaintiff is not entitled to collaterally attack his criminal sentences or otherwise have this Court second guess the decisions of the state courts. Further, he cannot maintain his claims under 42 U.S.C. § 1983 or 42 U.S.C. § 1985 because none of the actions allegedly taken by Defendants constitute a violation of his constitutional rights. Finally, even if a violation had occurred, Defendants would be entitled to qualified immunity or Plaintiff's claims would be barred under the Eleventh Amendment as discussed below. Accordingly, summary judgment will be awarded to Defendants on all of Plaintiff's claims.

## I. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003)**.** "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the

2

burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

3

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

Finally, in reviewing Defendant's filing, the Court is mindful that *pro se* filings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, Defendant's *pro se* status does not "give this Court license to serve as *de facto* counsel for him or to rewrite otherwise deficient pleadings on his behalf in order to sustain an action." *Dexter v. Alabama*, No. 08-0427, 2008 WL 2941156, at * 1 n.1 (S.D. Ala. July 24, 2008).

## II. FACTS AND PROCEDURAL HISTORY

On January 27, 2014, Plaintiff Charles Benzing was sentenced to thirty-six months of supervised probation in Wake County Superior Court in North Carolina as a result of criminal contempt violations related to his conduct in connection with domestic disputes. Benzing appealed his conviction to the North Carolina Court of Appeals, where his appeal and request for further review was denied. The "Regular Conditions of Probation" imposed by the state court included that he must remain within the jurisdiction of the Court unless granted written permission to leave by the Court or probation officer, that he must report to the probation office at reasonable times, places and in a reasonable manner, and that he was not allowed to obtain a firearm.

On March 23, 2015, Defendant Lockridge met with Benzing in the Mecklenburg County probation office in Charlotte for his initial office visit. In that meeting, they reviewed the conditions of Benzing's probation and the conditions of probation were provided to Plaintiff in writing, which he acknowledged. Benzing was told that he was expected to comply with the conditions in the court's judgment, which could not be changed by the probation office. Defendant

4

Lockridge and the other probation officers testified that they always believed that the court judgment against Benzing was valid, and there is no evidence suggesting otherwise.

Plaintiff was, however, unhappy with several of the conditions of probation, including requirements that he report to the probation office, that he could not leave the state without permission from the probation officer, and that home visits were necessary. Indeed, Benzing alleges that Defendants Lockridge's required home visits were done with the intent to "embarrass and/or humiliate" him. Benzing also made other complaints against the Mecklenburg County probation staff during the course of his supervised probation; however, no action was taken as the staff believed the claims to be baseless.

The Mecklenburg County probation office in Charlotte prohibits the use of cell phones in the office. At all relevant times, the probation office had signage posted stating, "Please turn off cell phones before entering. Thank you." Further, Benzing was instructed on several occasions by Defendants Lockridge, Sweatt and Treadway that video and audio recordings were prohibited at the probation office and that he would need to turn off his cell phone upon entering the office due to security and confidentiality reasons. On July 29, 2015, Benzing was in the lobby of the probation office recording with his cell phone and was asked to stop recording. Benzing refused to stop recording and began yelling and screaming that he had the right to use his cell phone to record in the office. As a result, Benzing was taken into custody for failure to report in a reasonable manner and for the failure to turn off his cellphone as requested. On October 27, 2015, Benzing appeared in court with counsel and admitted to the violations of his probation. Together with an order requiring Benzing to apologize for his behavior, the state court then ended Benzing's term of probation.

On October 24, 2017, Plaintiff filed this action, *pro se,* alleging violations of his constitutional rights. The Defendants in Plaintiff's original Complaint were NCDPS, Treadway, Sweatt, and Lockridge. On October 30, 2017, Plaintiff filed a First Amended Complaint, adding the State as a defendant. On April 19, 2018, Plaintiff filed a Second Amended Complaint, adding Defendant Ewald. After answers were filed denying the allegations, the case proceeded until on December 3, 2018, Plaintiff and Defendants filed their first separate Motions for Summary Judgment.

On July 27, 2018, Plaintiff filed a second action entitled *Benzing v. State*, 3:18-cv-00414-KDB-DSC, in which he alleged claims against Mike Slagel, NCDPS, and Anne Precythe. On January 29, 2019, the Court consolidated the two cases and ordered Plaintiff to file an Amended Complaint consolidating all the claims and defendants. On November 11, 2019, Plaintiff filed his Third Amended Complaint, which did not include claims against prior defendant Slagel, but reprised his statutory claims against the other Defendants under 42 U.S.C. § 1983 and 42 U.S.C. § 1985 based on numerous alleged violations of his "civil rights" and "civil liberties" related to his arrests, criminal sentences, probation conditions and the prohibited use of his cell phone in the probation office. Defendants answered this consolidated Complaint, denying its allegations. On May 4 and 6, 2020, the parties filed cross motions for summary judgment, which are now ripe for decision.

### III. DISCUSSION

Plaintiff describes his alleged unconstitutional and illegal treatment by the State of North Carolina from 2009 to 2015 and the alleged ongoing effect of that conduct on his life in a wide-ranging narrative; however, his legal claims are all asserted under 42 U.S.C. § 1983 and 42 U.S.C.

§ 1985, federal statutes which provide a civil remedy in appropriate circumstances for the violation of constitutional rights by the state or public officials.

Plaintiff's Section 1985 claims need be addressed only briefly. In order to prove a conspiracy in violation of 42 U.S.C. § 1985(3), a plaintiff must show, among other things, that "some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 267–68 (1993). Plaintiff's Complaint makes no allegations about racial or class discrimination nor has any sworn record evidence of such discrimination been proffered to the Court. Therefore, Defendants are entitled to summary judgment on Plaintiff's Section 1985 claims.

A claim under 42 U.S.C. § 1983 requires proof that: 1) a person has been deprived of a federal right; and 2) the person who deprived him of the federal right acted under the color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Thus, liability under Section 1983 "attaches only to those wrongdoers 'who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it.'" *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). Defendants do not contend that their allegedly wrongful conduct was not pursued under color of state law; rather, as discussed below, they argue that they are entitled to at least qualified immunity for acting within the bounds of their state authority. Therefore, the issue before the Court with respect to Plaintiff's Section 1983 claim is whether Plaintiff has raised a triable issue on whether he has been deprived of his constitutional rights. As discussed below,[1] he has not.

---

[1] In addition to the defenses discussed below, Defendants argue that Plaintiff's claims against Defendant Precythe are barred by the statute of limitations and the claims against the State, NCDPS, Treadway and Precythe cannot proceed because the claims are all related to their

7

With respect to the Defendants' alleged violations of his "civil rights," Plaintiff alleges that Defendants are liable for his arrests, the imposition of his criminal sentences and probation restrictions and taking action against him for using his cell phone in the probation office. With respect to the violation of his "civil liberties," Plaintiff claims that various Defendants have violated the First, Second, Fourth, Fifth, Eighth, and Fourteenth Amendments to the Constitution as follows:

First Amendment – Plaintiff alleges that Defendant Lockridge forcing Plaintiff to turn off his cell phone while at the probation office violates the First Amendment.

Second Amendment - Plaintiff contends that his cell phone is an "arm" under the Second Amendment's "right to bear arms" so Defendant Lockridge's refusal to allow Plaintiff to carry his cell phone violates the Second Amendment. Plaintiff alleges a violation of his Second Amendment rights by Judges Croom and Collins in sentencing him to probation because this prevented him from being able to purchase a handgun.

Fourth Amendment - Plaintiff alleges three searches of his belongings by Defendant Lockridge were unlawful. Also, Plaintiff asserts that his arrest at the probation office for continued recording with his cell phone was in violation of his Fourth Amendment rights.

Fifth Amendment – Plaintiff alleges that his Fifth Amendment rights were violated when Judge Collins proceeded with a hearing while his other case was still in the appeals process and when Judge Collins and Judge Croom sentenced Plaintiff for the same crime.

Eighth Amendment – Plaintiff claims that Judge Croom resentencing him to unsupervised probation and requiring that he take parenting classes and Judge Collins sentencing him to supervised probation violates the Eighth Amendment.

Fourteenth Amendment – Defendants allegedly violated the Fourteenth Amendment by restricting his ability to travel and requiring him to appear at the probation office. Also, Defendants Lockridge, Sweatt, and Ewald allegedly perjured themselves in their accounts on the Probation Violation Reports when he was arrested.

Each of these claims will be discussed in turn.

---

supervisory roles. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691(1978) (Defendants cannot be held liable under Section 1983 on a *respondeat superior* theory). For the reasons discussed below, there are ample other grounds supporting summary judgment for the Defendants so the Court need not reach these alternate arguments for summary judgment.

Claims Related to Arrests, Criminal Sentences and Probation Restrictions

Plaintiff asserts numerous claims relating to his arrest, conviction and the sentences imposed by Judges Croom and Collins. However, recovery of damages is not allowed under Section 1983 for an unconstitutional conviction, imprisonment, or other harm caused by actions whose unlawfulness would render the conviction or sentence unlawful, unless he can "prove that the underlying conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus". *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

Neither of the underlying convictions for criminal contempt nor Plaintiff's conviction for probation violations have been reversed, expunged, declared invalid, or questioned on habeas review, and therefore these claims must be dismissed in accordance with *Heck*; to hold otherwise would allow an impermissible collateral attack on Plaintiff's convictions through a Section 1983 claim. *Heck*, 512 U.S. at 486-87. Further, "it is always true of probationers . . . that they do not enjoy 'the absolute liberty to which every citizen is entitled, but only . . . conditional liberty properly dependent on observance of special [probation] restrictions.'" *Griffin v. Wisconsin* 483 U.S. 868, 874 (1987) (citing *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972); *see also United States v. Dotson*, 324 F.3d 256, 260 (4th Cir. 2003) (stating that district courts have broad discretion in fashioning terms of supervised release as long as the condition is "reasonably related" to the statutory factors in § 3583(d)). Therefore, the imposition of the "Regular Conditions of Probation" on Plaintiff cannot give rise to liability under Section 1983 where, as here, the validity of the underlying conviction is not subject to collateral challenge.

Claims Related to the First and Second Amendment

Plaintiff claims that the requirement by Defendant Lockridge to turn off his cell phone while attending his meetings in the probation office is a violation of his First Amendment right to free speech. While the Fourth Circuit has not decided this issue in a published decision,[2] other courts have ruled that there is no absolute First Amendment right to record public officials conducting their duty, *see Mocek v. City of Alburquerque*, 813 F.3d 912, 931 (10th Cir. 2017) (compiling cases and declining to find a "First Amendment right to record law enforcement officers in public") and those that do recognize a right to record the conduct of public officials (usually in the context of an encounter with the police in a public place) still subject the right to reasonable time, manner and place restrictions, *see Gilk v. Cunniffee*, 655 F.3d 78, 84 (1st Cir. 2011) citing *Smith v. City of Cumming*, 212 F.3d 1332, 1332 (11th Cir. 2000) (finding that there is a First Amendment right, subject to reasonable time, manner and place restrictions, to photograph or videotape police conduct).

More specific to the facts and limited issue presented here, courts have upheld restrictions on the use of cell phones in government buildings. *See Hodge v. Bd. of Cty. Comm'rs*, No. CIV.A. RWT-10-2396, 2010 WL 4068793 (D. Md. Oct. 15, 2010), aff'd, 414 F. App'x 567 (4th Cir. 2011) ("[t]his court takes notice that cell phones can be used to photograph and/or record closed or sensitive proceedings for unlawful purposes, and prohibition of cell phones in courts and public buildings is a common precaution…. there is no First Amendment 'right to communication" that guarantees a right to carry cellular phones in government buildings."); *Sheets v. City of Punta Gorda, Fla.*, 415 F. Supp. 3d 1115 (M.D. Fla. 2019) (citizen failed to

---

[2] In an unpublished decision, *Szymecki v. Houck*, 353 Fed. App'x. 852 (4th Cir. 2009), the Fourth Circuit held that as of the filing of that decision there was not a clearly established constitutional right in this circuit to record law enforcement activities.

10

demonstrate that city ordinance, which precluded video and sound recording without consent in city hall and city hall annex, limited public forums, was unreasonable restriction on speech in violation of the First Amendment); *Rouzan v. Dorta*, No. EDCV 12-1361-BRO JPR, 2014 WL 1716094 (C.D. Cal. Mar. 12, 2014), report and recommendation adopted, No. EDCV 12-1361-BRO JPR, 2014 WL 1725783 (C.D. Cal. May 1, 2014) (holding that defendant did not have a First Amendment right to record officials in a courthouse walkway, noting the absence of a right to record more important judicial proceedings and distinguishing the restriction from a First Amendment right to record police officers carrying out their duties in a public place). Indeed, this Court restricts the possession and usage of cell phones in the courthouse. *See* LCvR 83.3.

Accordingly, the Court declines to find that Plaintiff had an absolute First Amendment right to carry and use a cell phone in the Mecklenburg County probation office.[3] The state's "viewpoint neutral" and generally applicable restriction on the use of cell phones in the probation office did not limit Plaintiff's right to speak and was "reasonable in light of the purpose served by the forum." *Cornelius v. NAACP Legal Defense & Educ. Fund,* 473 U.S. 788, 806 (1985). Therefore, Defendants did not violate Plaintiff's First Amendment rights in enforcing the challenged restriction on cell phones.

Plaintiff bases his claim under the Second Amendment on his contention that his cell phone is a weapon which he contends is an "arm" for purposes of the Second Amendment because he uses its recording capability to "defend" himself. The Supreme Court has defined the "arms" protected by the Second Amendment as "weapons of offence, or armour of defence" or "anything that a man wears for his defence, or takes into his hands, or useth in wrath to cast at or strike

---

[3] The broader issue of the full scope of First Amendment's protection for the recording of the conduct of police and other officials in a public place is not before the Court and the Court need not and does not express any opinion on that issue.

11

another." *District of Columbia v. Heller*, 554 U.S. 570, 581 (2008). *Heller* defined the term "to keep arms" to mean "to have weapons" and "to bear arms" as to "carr[y] weapons." *Id.* at 582. Based on the Court's definition of "arms," the Plaintiff has failed to show that his right to use and keep his cell phone qualifies as an "arm" protected under the Second Amendment because even though a cell phone can be used to summon help or record a crime it is not a "weapon" of either offense or defense. Indeed, Plaintiff has not cited, nor has the Court found, any authority to support Plaintiff's argument that a cell phone can qualify as a weapon under the Second Amendment.

Plaintiff's last argument under the Second Amendment is that the State court violated the amendment by restricting him from possessing a firearm as a condition of probation. The Court finds that this is a reasonable restriction in connection with Plaintiff's criminal contempt conviction relating to an angry domestic dispute. Indeed, probation restrictions related to firearms are part of both the federal and state statutes related to conditions of probation. *See* 18 U.S.C. §1563(b)(8); N.C. Gen.Stat. §15A-1343(b)(5).

Thus, summary judgement will be granted in favor of the Defendants on Plaintiff's claims that the First and Second Amendment protect his use of his cell phone or right to possess a firearm under the particular facts presented in this action.

Claims Related to the Fourth Amendment

Plaintiff alleges three different occasions when Defendant Lockridge performed a search of his belongings in violation of his Fourth Amendment rights. The Fourth Circuit has held that North Carolina's probation conditions allowing for warrantless searches are valid and enforceable. *United States v. Midgette*, 478 F.3d 616, 623 (4th Cir. 2007). Further, the Fourth Circuit has held that searches conducted in conformity with N.C. Gen. Stat. § 15A—1343(b)(7) are reasonable under the Fourth Amendment. *Midgette*, 478 F.3d at 624. Therefore, Plaintiff has not established

12

that there was a violation of his Fourth Amendment rights based on Defendant Lockridge's searches.

In addition, Plaintiff alleges that in arresting him, Defendant Lockridge violated his Fourth Amendment rights by arresting him and seizing his cell phone when he refused to stop recording in the probation office. As discussed above, the State's policy of prohibiting use of cell phones in the probation office is not unlawful. Therefore, Plaintiff's arrest for, *inter alia*,[4] refusing to turn off his cell phone did not violate his rights under the Fourth Amendment.

<u>Claims Related to the Fifth Amendment</u>

Plaintiff alleges that his Fifth Amendment rights were violated by the timing of his state court hearing before Judge Collins and his sentencings by Judge Collins and Judge Croom. However, as discussed above, Plaintiff cannot challenge that hearing or his State court sentencings in this Court because none of the alleged unlawful conduct has been reversed on direct appeal or otherwise called into question as discussed above. *See Heck,* 512 U.S. at 486-87. Therefore, Plaintiff cannot support his Section 1983 claim with his allegations of a violation of the Fifth Amendment.

<u>Claims Related to the Eighth Amendment</u>

As with Plaintiff's claims under the Fifth Amendment, Plaintiff's claims under the Eighth Amendment relate to the probationary sentence that the State court imposed. Again, those sentences were not successfully challenged on direct appeal and have not otherwise been

---

[4] Plaintiff was arrested for failure to turn off his cellphone as instructed and for failure to report in a reasonable manner. North Carolina law allows courts to require probationers to report to his/her probation officer at "reasonable times and place and in a reasonable manner." *See State v. Lewis*, 188 N.C. App. 633 (2008); *State v. Coffey*, 74 N.C. App. 137 (1985). Additionally, Benzing was taken into custody for failure to report to probation as instructed and for failure to enroll in and complete the Safe Child program, both of which were valid conditions of his supervised release.

overturned or called into question. *See Heck,* 512 U.S. at 486-87. Therefore, Plaintiff's claims based on the Eighth Amendment cannot survive summary judgment.

### Claims Related to the Fourteenth Amendment

Finally, Plaintiff contends that Defendants violated the Fourteenth Amendment by restricting his ability to travel and requiring him to appear at the probation office. Invocation of the Fourteenth Amendment's due process guarantees requires a showing that the State deprived Plaintiff of a protected liberty or property. *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972). Plaintiff alleges that Defendants Lockridge and Sweatt restricted his travel in violation of his Fourteenth Amendment rights. However, one of Plaintiff's conditions of supervised release was that he was not to travel outside of the state without written permission from his probation officer. As stated above, probationers do not enjoy unlimited freedom and this condition of probation has been upheld by the Fourth Circuit. *See Griffin* 483 U.S. at 874; *Midgett*, 478 F.3d at 620. Accordingly, restricting Plaintiff's ability to travel does not violate his right to due process under the Fourteenth Amendment. *See Donoghue v. N.C. Dept. of Corr.*, 166 N.C. App. 612, 617 (2004) (requiring a probationer to "remain within the jurisdiction of the court" was a regular condition of probation); *State v. Sigmon*, 157 N.C. App. 143 (2003) (same); *Midgette*, 478 F.3d at 620 (same).

Further, the home visits that Plaintiff alleges were intended to "embarrass and/or humiliate" him are, according to Defendants, simply an even-handed standard policy requirement and, in any event, are a valid probation policy and restriction. Because there is no genuine issue of material fact concerning the lawfulness of the "home visits" related to Plaintiff's probation, this condition similarly does not give rise to potential liability under Section 1983.

Finally, Plaintiff claims that Defendants Lockridge, Sweatt and Ewald perjured themselves. First, it is clear from the Orders on Violation of Probation that there was no perjury

14

because the North Carolina Superior Court made a finding of fact that Plaintiff violated his probation. Second, Defendant Lockridge would be entitled to immunity for her testimony in a judicial proceeding. *See Wiley v. Mission Hosp.*, 2011 WL 6440562 at *1-2 (W.D.N.C. Dec. 21, 2011) (citing *Briscoe v. LaHue*, 460 U.S. 325 (1983)). And, third, the North Carolina Supreme Court held that "criminal sanctions for perjury are available, and therefore, no tort recovery for perjury is allowable." *Henry v. Deen*, 310 N.C. 75, 88 (1984) (citing *Gilliken v. Springle*, 254 N.C. 240 (1961)). Therefore, Plaintiff's claims of perjury are not actionable under Section 1983, and instead, should have been raised during the criminal proceeding.

<u>Qualified Immunity and the Eleventh Amendment</u>

The Court does not find that there has been a violation of Plaintiff's federal rights. However, the Defendants allege that even if any of Plaintiff's claims gave rise to a cause of action, they are shielded from a claim under Section 1983 because of qualified immunity and/or the Eleventh Amendment. The Court agrees.

The doctrine of qualified immunity protects government officials from actions for civil damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant moves for summary judgment on the ground that he enjoys qualified immunity from a claim under 42 U.S.C. § 1983, a court "must first ask the legal question of whether the plaintiff has alleged a violation of clearly established law of which a reasonable official would have known." *Lopez v. Robinson*, 914 F.2d 486 (4th Cir. 1990). The Supreme Court has established a two-pronged test for qualified immunity: "1) whether a constitutional right has been violated on the facts alleged, and 2) whether the right was clearly established at the time so

15

that it would be clear to an objectively reasonable officer that his conduct violated that right." *Saucier v. Katz*, 533 U.S. 194, 200-02 (2001).

Qualified immunity is structured to "reflect the concern that civil damages awards against public officials for every judicially determined violation of constitutional rights would prove too expensive to the public, discourage public service employment, and impair governmental decision-making." *Tarantino v. Baker*, 825 F.2d 772, 774 (4th Cir. 1987). As discussed above, Plaintiff has not proven that Defendants violated Plaintiff's rights, much less that Defendants violated any well-established rights secured to Plaintiff under North Carolina or federal law. Therefore, Defendants are entitled to summary judgment on the alternate ground of qualified immunity.

Finally, Section 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivation of civil liberties." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 66 (1989). The Eleventh Amendment "bars such suits unless the State has waived its immunity…or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Id.* Accordingly, NCDPS is routinely dismissed from lawsuits brought under Section 1983. *See, e.g., Wood v. Dept. of Pub. Safety*, 2019 WL 2502786 at *2 (W.D.N.C. June 17, 2019) (dismissing NCDPS under frivolity review); *Maldonado-Reynolds v. N.C. Dept. of Pub. Safety*, 2017 WL 1067796 at *1-2 (E.D.N.C. Jan. 3, 2017) (same).

Although the Eleventh Amendment does not bar official capacity claims for injunctive relief against state officials, claims for injunctions are moot unless there is a continuing issue between the parties. The Fourth Circuit has held had claims for injunctive relief are moot once a criminal defendant has served his sentence. *Clay v. Miller*, 626 F.2d 345, 347 (4th Cir. 1980); *see also Brinson v. Providence Comm. Corr.*, 703 Fed Appx. 874, 877 (11th Cir. 2017) (claim moot because probation terminated); *Daniels v. Brown*, 349 F. Supp. 1288, 1290 (E.D. Va. 1972) (same).

16

Thus, any claim for injunctive relief by Plaintiff would be moot because his probation has been terminated.

The Eleventh Amendment is also applicable to state officers sued in their official capacity. *See Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459 (1945). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office. As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71. "State officials acting in their official capacity are therefore not 'persons' for the purposes of § 1983 and are not proper defendants to a § 1983 lawsuit." *Diggs v. Balogun*, 2017 WL 4921690 at *4 (D. Md. Oct. 31, 2017) (citing *Will*, 491 U.S. at 71). Therefore, Defendants are entitled to summary judgment for all of Plaintiff's official capacity claims under the Eleventh Amendment.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Doc. No. 58) is hereby **DENIED**;
2. Defendants' Motion for Summary Judgment (Doc. No. 59) is hereby **GRANTED;**
3. Summary Judgment in favor of Defendants is entered on all of Plaintiff's claims; and
4. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 23, 2020

Kenneth D. Bell
United States District Judge